IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

EARL D. WARNER,

        Defendant.

Criminal No. 12-0107
ELECTRONICALLY FILED

**MEMORANDUM ORDER ON MOTION FOR RECONSIDERATION OF MOTION TO SUPPRESS (doc. no. 65)**

**I.    Introduction**

On October 24, 2013, this Court issued its Memorandum Opinion and Order denying Defendant, Earl D. Warner's, Motion to Suppress Defendant's Statements, following a two-day evidentiary hearing. Doc. Nos. 44 and 61. In this Court's Memorandum Opinion, it framed the "key issue[s]" as "whether, on April 3, 2012, Defendant was in 'custody' (and thereby needed to be advised of his *Miranda* rights) or whether he voluntarily provided information to the police officers." Doc. No. 61 at 1. Although the Court performed an in-depth analysis with corresponding findings of fact and conclusion of law on whether Defendant was in custody, and whether he should have been advised of his *Miranda* rights, in its Opinion and Order, the Court inadvertently overlooked an in-depth analysis of whether his statements were voluntarily provided to the police officers.

Thereafter, Defendant filed a Motion to Reconsider seeking this Court to "review and decide the voluntariness issue." Doc. No. 65 at 3. The Government has responded that it also seeks a ruling thereon. Doc. No. 74. The Court will so provide an analysis on the voluntariness of Defendant's statements to the officers, and therefore, Defendant's Motion to Reconsider will

be GRANTED; however, the portion of his Motion to Suppress with respect to voluntariness will be DENIED.

## II.     Supplemental Findings of Fact – Voluntariness of Statements

1. The Court hereby incorporates the prior findings of fact regarding the interview process and will not reiterate them here, except where as necessary.

2. Defendant, a man in his 50's with prior law enforcement contact, met with and spoke with Special Agent Carter and Trooper Owen following a telephone conference, a few days prior to April 3, 2012.

3. Defendant accepted the invitation presented by Trooper Owen to participate in the interview.

4. Trooper Owen and Special Agent Carter explained that Warner was not obligated to provide answers to their questions, nor to continue the interview.

5. Special Agent Carter was in the office near the desk when Defendant and Trooper Owen walked in. The office where Defendant talked with Trooper Owen and Special Agent Carter contained no device for tethering or chaining.

6. Both Trooper Owen and Special Agent Carter testified that prior to posing any questions to Defendant about Armando Cruz and the investigation of Mercer County adults sexually abusing children, Defendant was told that he was free to leave at any point in time, that the office door was only closed for privacy purposes, and that he would be going home that day.

7. Defendant concurred that he was told that he was not being arrested that day and that he was free to leave at any time. Defendant was asked if he understood what had just been explained to him, Defendant indicated that he understood.

8. Defendant, however, testified that he "stood up" two times while being interviewed in the office. He stated that the first time was when Trooper Owen bounced the chair off the wall and that startled Defendant. The second time occurred after Trooper Owen returned to the room and called Defendant a liar. Defendant testified that he then got up out of his chair and attempted to leave the office but Trooper Owen blocked him, physically, from doing so. In addition, Defendant testified that requested an attorney twice during the interview. The first time was after the alleged chair-bouncing incident, and the second time was right after Trooper Owen allegedly called him a liar.

9. Trooper Owen testified that he never threw a chair, there were no (extra) chairs in the room to throw, and that he never called Defendant a liar.

10. Defendant and both investigators testified that after being in the office for nearly an hour, Defendant told Special Agent Carter and Trooper Owen that he had answered enough questions and wanted to leave. The two investigators stopped asking questions and Defendant walked out of the office and left the Barracks.

11. Defendant never asked to leave prior to that time, never asked to use the restroom, and not surprisingly, given the relatively short nature of the interview, he never asked for food or water.

12. Based on the above summarized testimony, and after observing the four witnesses' appearances, behavior, and manner while testifying, as well as considering their relationships to one another, and their motives and biases, the Court finds that the accounts of Trooper Owen, a state trooper of eight years, and Special Agent Carter, an agent of the FBI for twenty-two years, to be more credible than Defendant's with respect to what occurred inside the Barracks and the office on April 3, 2012.

13. The Court therefore concludes that there is no credible evidence that either Trooper Owen or Special Agent Carter coerced Defendant into providing the statements at issue, that the questioning took place over Defendant's desire to have counsel, or that his will was overborne in any way. Instead, both Agent Carter and Trooper Owen indicated that Defendant did not ask for a lawyer or to leave, and that he answered the questions of his own free will.

### III. Supplemental Conclusions of Law – Voluntariness of Statements

1. The Court hereby incorporates its prior rulings on whether Miranda warnings were required. The remaining issue is whether Defendant's statements were "voluntary," upon a consideration of the totality of the circumstances. *Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir.), *cert. denied* 479 U.S. 989. (1986).

2. In order to determine whether a statement or confession was voluntarily given, "the question in each case is whether the defendant's will was overborne at the time he confessed." *Hayes v. Washington*, 373 U.S. 503, 513 (1973).

3. The test for voluntariness is not a but-for analysis, but rather, it depends upon an assessment of the "totality of all the surrounding circumstances," including "both the characteristics of the accused and the details of the investigation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Miller*, 796 F.2d at 604.

4. There are numerous factors, all of which are relevant, and none of which are dispositive, that may be considered in looking at the totality of circumstances. The Court may look to the age of the accused, his/her educational background, his/her relative intelligence, any lack of advice to the accused of his constitutional rights, the length of the "detention," the repeated and prolonged nature of the interview, and whether any physical punishment such as the deprivation of food or sleep was used. *Miller*, 796 F.2d at 604.

5. As stated in the findings of fact, Defendant is in his 50's and has prior law enforcement exposure, the interview was relatively short (less than one hour), there was no physical punishment or threat thereof (including no chair throwing), and the interview did not take place in an "interrogation" room with shackles. In conclusion, upon consideration of the totality of the surrounding circumstances, there is no evidence that Defendant's will was overborne in any way, and therefore, his statements were voluntarily given.

## IV. Conclusion

For the reasons set forth hereinabove, Defendant's Motion for Reconsideration (doc. no. 65) is GRANTED; and, Defendant's Motion to Suppress (regarding voluntariness) (doc. no. 44) is DENIED.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All Registered ECF Counsel and Parties